UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EVELYN MEDRANDA,

Plaintiff,

v.

MARTIN O'MALLEY, Commissioner of Social
Security,[1]

Defendant.

CIVIL ACTION NO.: 23 Civ. 6633 (SLC)

**OPINION & ORDER**

**SARAH L. CAVE,** United States Magistrate Judge.

## I.INTRODUCTION

Plaintiff Evelyn Medranda ("Ms. Medranda") commenced this action pursuant to

Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (the "Act"), seeking review of the

May 3, 2023 decision (the "Fifth Decision") by the Commissioner (the "Commissioner") of the

Social Security Administration ("SSA") denying her applications for Supplemental Security Income

("SSI") and Disability Insurance Benefits ("DIB").  (ECF No. 1).  In her motion for judgment on the

pleadings pursuant to Federal Rule of Civil Procedure 12(c) (ECF No. 14 ("Ms. Medranda's

Motion")), Ms. Medranda contends that the May 3 Decision is not supported by substantial

evidence and contains errors of law and asks the Court to reverse and remand for the calculation

of the award of benefits.  (ECF No. 15).  The Commissioner also requests a remand of this matter,

but for the purpose of conducting further administrative proceedings, not for the calculation of

benefits.  (ECF No. 16 (the "Commissioner's Motion")).[2]

---

[1] As of December 20, 2023, Martin O'Malley is the Commissioner of the Social Security Administration.
Pursuant to Federal Rule of Civil Procedure 25(d), the Clerk of the Court is respectfully requested to
substitute him as a Defendant in place of former Commissioner Kilolo Kijakazi.  See Davis v. O'Malley,
No. 20 Civ. 6033 (VSB) (JLC), 2024 WL 3596885, at *1 n.1 (S.D.N.Y. July 30, 2024).
[2] The Commissioner styled his response to Ms. Medranda's Motion as "a brief in opposition" rather than
a cross-motion for judgment on the pleadings, citing Supplemental Rules for Social Security Actions under

For the reasons set forth below, Ms. Medranda's Motion is GRANTED IN PART and DENIED IN PART, and the Commissioner's Motion is GRANTED IN PART and DENIED IN PART, and this action is remanded for further proceedings, consistent with this Opinion and Order, which must be completed before the ALJ within 120 days of today's date, and before the Commissioner within 60 days of any appeal from the decision of the ALJ.

## II. BACKGROUND

### A. Factual Background

#### 1. Personal Background

Ms. Medranda was born in 1973.  (Certified Administrative Record (ECF No. 11) ("R. _") 332).  She obtained her GED in 1998 and does not drive.  (R. 389; id. at 68, 1565, 2548).  Ms. Medranda's past relevant work ("PRW")[3] includes child monitor (or babysitter) and hairstylist. (R. 1571–72, 2517, 2553).  The record also reflects that she has worked in several other jobs for one year or less each, including as an office assistant, school bus monitor, rebate processor, kennel assistant, and retail sales associate at a bridal shop.  (R. 38, 53, 69–70, 385, 392, 437, 441, 828–31, 1548–50, 1552).  Her last insured date is June 30, 2013.  (R. 2505).

---

42 U.S.C. § 405(g) and this Court's Standing Order No. 22-MC-329 (LTS).  (ECF No. 16 at 5 n.2).  In the conclusion of his brief, however, he asks for an order affirming the May 3 Decision "as supported by substantial evidence."  (Id. at 20).  Pursuant to Federal Rule of Civil Procedure 7(b)(1), any "request for a court order must be made by motion[,]" and filing a brief or memorandum of law "in support of a motion does not relieve the putative movant of the need to file a separate document styled as a motion[.]" Rodriguez v. Comm'r of Soc. Sec., No. 22 Civ. 10665 (GS), 2024 WL 1342834, at *1 n.2 (S.D.N.Y. Mar. 29, 2024).  Given the nature of the relief the Commissioner is seeking, the Court "will overlook this failure to comply with Rule 7(b)(1) and deem the Commissioner's brief to constitute a cross-motion."  Id.

[3] At the relevant time, past relevant work included work performed within 15 years before the last insured date that was "substantial gainful activity" ("SGA"), and lasted long enough for the claimant to learn to do it.  See Program Operations Manual System (POMS) DI 25001.001 Medical and Vocational Quick Reference Guide, available at, https://secure.ssa.gov/apps10/poms.nsf/lnx/0425001001 (last visited Sept. 5, 2024).  (See ECF No. 15 at 4 n.3).

### 2. Medical Records

Since June 2012, Ms. Medranda has been treated for fibromyalgia and mild cervical radiculopathy. (R. 699, 1136–1201, 1281–1346, 2471–79, 2958–3033). Since September 2013, she has received mental health treatment. (R. 1099–1135, 1244-1280,2059-2306, 3034–3244). In March 2017, she was diagnosed with breast cancer, for which she underwent a lumpectomy and radiation therapy. (R. 1354–1464, 1487–1501, 1807–66).

### 3. Opinion Evidence

Several consultative examiners evaluated Ms. Medranda, including internist Barbara Akresh, M.D., in May 2009, psychiatric examiner Dmitri Bougakov, Ph.D., in August 2009, internist Julia Kaci, M.D., in September 2018, and psychiatric examiner Melissa Antiaris, Psy.D., in October 2018. (R. 455–58, 530–32, 1477–80, 1481–86).

The record includes several medical opinions. In May 2009, Dr. Akresh opined that Ms. Medranda's exertional limitations were mild. (R. 458). Neurologist Manjeet Singh Dhallu, M.D., opined in August 2012 and July 2013 that Ms. Medranda was "unable to work until further notice" due to fibromyalgia, headaches, and mild cervical radiculopathy. (R. 699, 733). In March 2014, Dr. Dhallu added that Ms. Medranda's symptoms were severe enough to interfere with her attention and concentration most of the day, and that she could not sit, stand, or walk for even one-half hour per day, would need frequent breaks, and would be absent from work more than three times per month. (R. 743–49). A medical doctor at the Westchester County Department of Social Services assessed in April 2015 that, due to constant pain, Ms. Medranda was "permanently disabled, [] not expected to improve, and [] unable to participate in any activities." (R. 750–54). This was consistent with a 2013 employability assessment, which concluded that

she was "unable to participate in any activities except treatment or rehabilitation[.]"  (R. 714–16).  In August 2018, Karen Doblin, N.P., opined that Ms. Medranda could sit, stand, or walk for less than an hour per day, could never lift or carry more than five pounds, and would be absent from work more than three days per month.  (R. 1347–53).  In September 2018, Dr. Kaci opined that Ms. Medranda had "moderate limitations to prolonged standing, walking, climbing stairs, lifting, carrying, pushing, pulling, and activities requiring prolonged used of hands."  (R. 1480).

In August 2009, Dr. Bougakov opined that Ms. Medranda could "follow and understand simple directions[,]" "perform simple tasks[,]" "maintain attention and concentration" and a "regular schedule[,]" and "make appropriate decisions, relate adequately with others, and deal with stress on a limited basis[,]" but was "somewhat limited in [her] ability to learn new tasks and perform complex tasks." (R. 531).  In September 2009, state agency psychological consultant Y. Burstein, based on a review of the medical records, assessed that Ms. Medranda had mild to moderate mental limitations in some areas, but no significant limitations in several aspects of sustained concentration and persistence, social interaction, and adaptation.  (R. 535–51).  In September 2018, her psychiatric nurse practitioner, Ruddy S. Calderon, N.P., opined that she lacked many of the mental abilities and aptitudes needed to do unskilled work.  (R. 1469–75).  In October 2018, Dr. Antiaris found:  (i) no limitations in her abilities to understand, remember, and apply simple instructions; use reason to make work-related judgment or interact adequately with supervisors, co-workers, and the public; and maintain personal hygiene and awareness of personal hazards; (ii) mild limitations in her abilities to understand, remember, and apply complex directions, and maintain concentration and perform a task at a consistent pace, and (iii) moderate limitations in her ability to regulate emotions, control behavior, and maintain well-

being.  (R. 1484–85).  Dr. Antiaris opined that Ms. Medranda's difficulties were "caused by lack of motivation" and treatable by continued psychiatric and psychological therapy within six months to one year.  (R. 1485).

### B.  Procedural Background

#### 1.  The Applications

On April 7, 2009, Ms. Medranda filed applications for SSI and DIB (the "Applications"), alleging disability due to fibromyalgia beginning on February 1, 2009.  (R. 332–41).  After her Applications were denied, she requested a hearing before an administrative law judge ("ALJ"). (R. 135–44).  Hearings commenced in August 2010, November 2010, and February 2011, but adjourned to permit Ms. Medranda to obtain counsel.  (R. 93–104, 105–11, 755–62).

#### 2.  The First Hearing and First Decision

On August 24, 2011, Ms. Medranda appeared at a hearing with counsel and testified before ALJ Roberto Lebron.  (R. 62–92).  On November 10, 2011, ALJ Lebron issued a decision denying Ms. Medranda's Applications.  (R. 114–28 (the "First Decision")).  On July 11, 2013, the Appeals Council granted Ms. Medranda's request for review, vacated the First Decision, and remanded to the ALJ with instructions about additional analysis and evidence required to evaluate Ms. Medranda's Applications properly.  (R. 129–34).

#### 3.  The Second Hearing and Second Decision

On October 16, 2013, ALJ Lebron held a second hearing, (R. 31–61), and on July 30, 2014, he issued a second decision finding Ms. Medranda not disabled.  (R. 8–30 (the "Second Decision")).  After the Appeals Council denied review, Ms. Medranda filed an action in this Court. (R. 1–6; see Medranda v. Colvin, No. 16 Civ. 1656 (SN)).  On July 28, 2016, pursuant to a

5

stipulation between the parties, the matter was remanded for further administrative proceedings. (R. 845–47).

### 4. The Third Hearing and Third Decision

Following remand, the case was assigned to ALJ Katherine Edgell, who held a hearing on September 20, 2018. (R. 792–844). On December 19, 2018, ALJ Edgell issued a decision finding Ms. Medranda not disabled. (R. 763–91 (the "Third Decision")). Ms. Medranda appealed the Third Decision to this Court (Medranda v. Comm'r of Soc. Sec., No. 19 Civ. 3025 (GBD) (BCM)), and on May 11, 2020, pursuant to a stipulation between the parties, the matter was remanded again for further administrative proceedings. (R. 1611–14).

### 5. The Fourth Hearing and Fourth Decision

Following remand, the case was reassigned to a third ALJ, Sharda Singh, who held a hearing on February 22, 2021. (R. 1539–81). On April 1, 2021, ALJ Singh issued a decision finding Ms. Medranda not disabled. (R. 1509–38 (the "Fourth Decision")). Ms. Medranda appealed the Fourth Decision to this Court (Medranda v. Saul, No. 21 Civ. 4826 (VEC) (SDA)), and on September 30, 2021, pursuant to a stipulation between the parties, the matter was remanded again for further administrative proceedings. (R. 2566–78).

### 6. The Fifth Hearing and the Fifth Decision

On remand, on February 10, 2023, ALJ Singh held another hearing. (R. 2532–65 (the "Fifth Hearing")). As is relevant to the Motions, during the Fifth Hearing, the vocational expert ("VE") testified that Ms. Medranda could work as a hand packer, production worker, or production inspector, which were "representative samples[] of" titles within "a broader category of . . . the standard occupational classification ['SOC']." (R. 2555–56). The VE also testified that he used

"U.S. Publishing, the latest projections" as the basis of his estimates of the number of relevant jobs in the national economy but that he had reduced the U.S. Publishing numbers to account for the sitting and standing limitations the ALJ had posed in a hypothetical.  (R. 2560–62).  The VE seemed unwilling, however, to provide estimates for the number of positions in the national economy for the specific titles of hand packer, production worker, and production inspector. (R. 2556).  After the ALJ excused the VE, Ms. Medranda's counsel expressed concern that the VE's projected job numbers "[we]re nonsensical" and "pulled . . . out of [a] hat."  (R. 2562–63).  The SSA, he continued, "requires numbers based on the [Dictionary of Occupational Titles ('DOT')]" and that the VE's refusal to provide estimates based on the DOT positions "br[ought] the entirety of his testimony into question."  (R. 2563).

On May 3, 2023, ALJ Singh issued the Fifth Decision finding Ms. Medranda not disabled. (R. 2499–2531).  At step one of the inquiry (see § III.A.2, infra), the ALJ found that Ms. Medranda had not been engaged in substantial gainful activity since February 1, 2009, the alleged onset date, and at step two, that Ms. Medranda had the severe impairments of bipolar disorder, depressive disorder, anxiety disorder, fibromyalgia, chronic fatigue syndrome, cervical radiculopathy, and breast cancer.  (R. 2505).  At step three, the ALJ found that Ms. Medranda's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 2506).  The ALJ then found that Ms. Medranda retained the residual functional capacity to perform light work with additional postural, manipulative, and mental limitations (the "RFC").  (R. 2509–10).  Relying in part on the testimony of the vocational expert at the Fifth Hearing, the ALJ concluded at the fourth step that Ms. Medranda could not perform her PRW as a hair stylist or child monitor, but, at the fifth step, that there are jobs that exist in

significant numbers in the national economy that she can perform. (R. 2517–18; see R. 2554–62). Accordingly, ALJ Singh found Ms. Medranda not disabled and denied the Applications. (R. 2518–19).

### 7. This Action

On July 31, 2023, Ms. Medranda filed this action seeking review of the Fifth Decision. (ECF No. 1). On August 10, 2023, the parties consented to Magistrate Judge jurisdiction for all purposes. (ECF No. 10). On September 21, 2023, the Commissioner offered to stipulate to a voluntary remand for further administrative proceedings, which Ms. Medranda declined. (ECF Nos. 15 at 9; 16 at 5 n.3). On November 7, 2023, Ms. Medranda filed her Motion, on January 26, 2024, the Commissioner filed his Motion, and on February 4, 2024, Ms. Medranda filed her reply. (ECF Nos. 14–17).

## III. DISCUSSION

### A. Legal Standards

#### 1. Standard of Review

Under Rule 12(c), a party is entitled to judgment on the pleadings if she establishes that no material facts are in dispute and that she is entitled to judgment as a matter of law. See Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999); Morcelo v. Barnhart, No. 01 Civ. 743 (RCC) (FM), 2003 WL 470541, at *4 (S.D.N.Y. Jan. 21, 2003).

The Act provides that the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). A court may set aside the Commissioner's decision denying benefits if it is not supported by substantial evidence or was based on legal error. See Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009). Judicial review,

therefore, involves two levels of inquiry.  First, the Court must decide whether the ALJ applied the correct legal standard.  See Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Calvello v. Barnhart, No. 05 Civ. 4254 (SCR) (MDF), 2008 WL 4452359, at *8 (S.D.N.Y. Apr. 29, 2008).  Second, the Court must decide whether the ALJ's decision was supported by substantial evidence.  Tejada, 167 F.3d at 773.  "In determining whether substantial evidence exists, a reviewing court must consider the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Longbardi v. Astrue, No. 07 Civ. 5952 (LAP), 2009 WL 50140, at *21 (S.D.N.Y. Jan. 7, 2009).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008).

The substantial evidence test applies not only to factual findings, but also to the inferences and conclusions drawn from those facts.  See, e.g., Carballo ex rel. Cortes v. Apfel, 34 F. Supp. 2d 208, 214 (S.D.N.Y. 1999).  In determining whether the administrative record contains evidence to support the denial of claims, the Court must consider the whole record, and weigh all evidence to ensure that the ALJ evaluated the claim fairly.  See, e.g., Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999).  The Commissioner, not the Court, resolves evidentiary conflicts and appraises the credibility of witnesses, including the claimant.  See, e.g., Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002); Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).

Disability benefits proceedings are non-adversarial in nature, and therefore, the ALJ has an affirmative obligation to develop a complete administrative record, even when the claimant is represented by counsel.  See Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 508–09 (2d Cir. 2009).

To this end, the ALJ must make "every reasonable effort" to help an applicant get medical reports from her medical sources.  20 C.F.R. §§ 404.1512(b), 416.912(b).  Ultimately, "[t]he record as a whole must be complete and detailed enough to allow the ALJ to determine the claimant's [RFC]." Casino-Ortiz v. Astrue, No. 06 Civ. 155 (DAB) (JCF), 2007 WL 2745704, at *7 (S.D.N.Y. Sept. 21, 2007), adopted by, 2008 WL 461375 (S.D.N.Y. Feb. 20, 2008).  When there are inconsistencies, gaps, or ambiguities in the record, the regulations give the ALJ options to collect evidence to resolve these issues, including re-contacting the treating physician, requesting additional records, arranging for a consultative examination, or seeking information from others.  See 20 C.F.R. §§ 404.1520b, 416.920b.

The Act authorizes a court, when reviewing decisions of the SSA, to order further proceedings:  "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g); see Butts v. Barnhart, 388 F.3d 377, 382 (2d Cir. 2004).  If "'there are gaps in the administrative record or the ALJ has applied an improper legal standard,'" the Court will remand the case for further development of the evidence or for more specific findings.  Rosa v. Callahan, 168 F.3d 72, 82–83 (2d Cir. 1999) (quoting Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996)).  Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision.  See Pratts, 94 F.3d at 39.  If the reviewing court concludes that an ALJ's determination to deny benefits was not supported by substantial evidence, a remand solely for calculation of benefits may be appropriate.  See, e.g., Butts, 388 F.3d at 386 (discussing Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000)).  "[A]bsent a finding that the claimant was actually disabled, delay alone is an

insufficient basis on which to remand for benefits." Bush v. Shalala, 94 F.3d 40, 46 (2d Cir. 1996); accord Batista v. Comm'r of Soc. Sec., No. 3:19 Civ. 1660 (RMS), 2020 WL 6709096, at *5 (D. Conn. Nov. 16, 2020); Gross v. McMahon, 473 F. Supp. 2d 384, 386 (W.D.N.Y. 2007).

### 2. Standards for Benefit Eligibility

For purposes of SSI and DIB benefits, one is "disabled" within the meaning of the Act, and thus entitled to such benefits, when she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(3)(A). The Act also requires that the impairment be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. 1382c(3)(B). In reviewing a claim of disability, the Commissioner must consider: "(1) objective medical facts; (2) diagnos[e]s or medical opinions based on those facts; (3) subjective evidence of pain and disability testified to by claimant and other witnesses; and (4) the claimant's background, age, and experience." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 259 (2d Cir. 1988).

Under the applicable regulations, an alleged disability is evaluated under the sequential five-step process set forth in 20 C.F.R. §§ 404.1520(a)(4)(i)–(v) and 416.920(a)(4)(i)–(v). The Second Circuit has described the process as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the

claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the <u>fourth</u> inquiry is whether, despite the claimant's severe impairment, he has the [RFC] to perform his past work.  <u>Finally</u>, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the Claimant could perform.

<u>Bush</u>, 94 F.3d at 44–45 (quoting <u>Rivera v. Schweiker</u>, 717 F.2d 719, 722 (2d Cir. 1983)).

At the first four steps, the claimant bears the burden of proof.  At the fifth step, the burden shifts to the Commissioner to demonstrate that there are jobs in the national economy that the claimant can perform.  <u>See</u>, <u>e.g.</u>, <u>Poupore v. Astrue</u>, 566 F.3d 303, 306 (2d Cir. 2009).  To satisfy the burden of proof at the fifth step, the Commissioner can usually rely on the Medical-Vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, known as "the Grid." <u>See</u> Zorilla <u>v. Chater</u>, 915 F. Supp. 662, 666–67 (S.D.N.Y. 1996).

### 3. <u>Treating Physician Rule</u>[4]

The regulations require the ALJ to give "controlling weight" to "the opinion of a claimant's treating physician as to the nature and severity of the impairment . . . so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." <u>Burgess</u>, 537 F.3d at 128; <u>accord</u> <u>Green-Younger v. Barnhart</u>, 335 F.3d 99, 106 (2d Cir. 2003); <u>Correale-Englehart v. Astrue</u>,

---

[4] The Court notes that "[i]n March 2017, the Social Security Administration published regulations that effectively abolished the Treating Physician Rule for claims filed on or after March 27, 2017." <u>Dorta v. Saul</u>, No. 19 Civ. 2215 (JGK) (RWL), 2020 WL 6269833, at *3 n.8 (S.D.N.Y. Oct. 26, 2020).  Under the new regulations the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Because Ms. Medranda filed the Applications in 2009, the Treating Physician Rule applies.  (R. 332, 339).

687 F. Supp. 2d 396, 426 (S.D.N.Y. 2010). "This preference is generally justified because treating sources are likely to be 'the medical professionals most able to provide a detailed, longitudinal picture' of a plaintiff's medical impairments and offer a unique perspective that the medical tests and SSA consultants are unable to obtain or communicate." Correale-Engelhart, 687 F. Supp. 2d at 426 (quoting 20 C.F.R. § 416.927([c])(2)); see 20 C.F.R. § 404.1527(c)(2).

If the ALJ determines that a treating physician's opinion is not controlling, she is nevertheless required to consider the following factors in determining the weight to be given to that opinion:  (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidence provided to support the treating physician's opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) other factors brought to the Commissioner's attention that tend to support or contradict the opinion.  See 20 C.F.R. §§ 404.1527(c); 416.927(c).  The ALJ must give "good reasons" for not crediting the plaintiff's treating physician. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); see Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (explaining that Appeals Council had "an obligation to explain" the weight it gave to the opinions of non-treating physicians).  After considering these factors, the ALJ must fully set forth his reasons for the weight assigned to the treating physician's opinion.  See Burgess, 537 F.3d at 129.

While the ultimate issue of disability is reserved to the Commissioner, the regulations make clear that opinions from one-time examining sources that conflict with treating source opinions are generally given less weight.  See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); see also Selian v. Astrue, 708 F.3d 409, 419 (2d Cir. 2013) ("ALJs should not rely heavily on the findings of consultative physicians after a single examination."); Cabreja v. Colvin, No. 14 Civ. 4658 (VSB),

2015 WL 6503824, at *30 (S.D.N.Y. Oct. 27, 2015) (explaining that opinions of one-time consultants should not overrule those provided by the treating medical sources unless there are "serious errors" in treating sources' opinions).  Failing to apply proper weight to a treating physician's opinion is reversible error.  See Greek v. Colvin, 802 F.3d 370, 376 (2d Cir. 2015).

### 4. <u>Assessing a Claimant's Subjective Allegations</u>

In considering a claimant's symptoms that allegedly limit the ability to work, the ALJ must first determine whether there is an underlying "medically determinable" physical or mental impairment(s)—i.e., an impairment(s) that can be shown by "medically acceptable clinical and laboratory diagnostic techniques"—that could reasonably be expected to produce the claimant's pain or other symptoms.  See 20 C.F.R. §§ 404.1529(c), 416.929(c).  If such an impairment is found, the ALJ must next evaluate the "intensity, persistence, and limiting effects of [the claimant's] symptoms" to determine the extent to which they limit the claimant's functional limitations.  20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  To the extent that the claimant's expressed symptoms are not substantiated by the objective medical evidence, the ALJ must evaluate the claimant's credibility.  See Meadors v. Astrue, 370 F. App'x 179, 183–84 (2d Cir. 2010); Taylor v. Barnhart, 83 F. App'x 347, 350–51 (2d Cir. 2003).

Courts have recognized that "the second stage of [the] analysis"—that is, the "intensity, persistence, and limiting effects" stage, see 20 C.F.R. §§ 401.1529(c)(4), 416.919(c)(4)—"may itself involve two parts."  Sanchez v. Astrue, No. 07 Civ. 9318 (DAB), 2010 WL 101501, at *14 (S.D.N.Y. Jan. 12, 2010).  "First, the ALJ must decide whether objective evidence, on its own, substantiates the extent of the alleged symptoms (as opposed to the question in the first step of whether objective evidence establishes a condition that could 'reasonably be expected' to

produce such symptoms)." Id. "Second, if it does not, the ALJ must gauge a claimant's credibility regarding the alleged symptoms by reference to the seven factors listed [in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3)]." Id. (citing Gittens v. Astrue, No. 07 Civ. 1397 (GAY), 2008 WL 2787723, at *5 (S.D.N.Y. June 23, 2008)). These seven factors include: (1) an individual's daily activities; (2) the location, duration, frequency and intensity of pain or other symptoms; (3) factors that precipitate and aggravate those symptoms; (4) the type, dosage, effectiveness, and side effects of medication that the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, that the individual receives or has received for pain or other symptoms; (6) measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. See Bush, 94 F.3d at 46 n.4. If the ALJ does not follow these steps, remand is appropriate. See Sanchez, 2010 WL 101501, at *15.

**B. Application**

The parties agree that the ALJ erred at step five of the analysis in the Fifth Decision and that remand is appropriate, but they disagree about what should occur on remand. Ms. Medranda argues that remand solely for the calculation of benefits is appropriate because, over 15 years, "[t]he Commissioner has been unable to properly evaluate [her] claim for benefits on eight separate occasions," and is not "entitled to another chance." (ECF No. 15 at 10; see id. at 17). On the other hand, the Commissioner argues that "the record does not show persuasive proof of disability" and therefore remand for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g) is warranted "due to a need for further development of the record at step five, and for further evaluation of the opinion evidence." (ECF No. 16 at 5).

"Remand for additional proceedings has been held to be appropriate 'when there are gaps in the administrative record or the ALJ has applied an improper legal standard.'" Ben v. Berryhill, No. 17 Civ. 8345 (DCF), 2019 WL 1447892, at *4 (S.D.N.Y. Mar. 19, 2019) (quoting Rivera v. Barnhart, 423 F. Supp. 2d 271, 277 (S.D.N.Y. 2006)). "Alternatively, the Court may remand solely for the calculation of benefits, but this is an 'extraordinary action and is proper only when further development of the record would serve no purpose.'" Ben, 2019 WL 1447892, at *4 (quoting Rivera v. Barnhart, 379 F. Supp. 2d 599, 604 (S.D.N.Y. 2005)). "The mere fact that a remand for additional proceedings will delay the ultimate resolution of a plaintiff's claim is not a proper basis for remand solely for the calculation of benefits." Ben, 2019 WL 1447892, at *4; see Bush, 94 F.3d at 46 (finding that ten-year delay did not alone justify remand solely for calculation of benefits).

The Court finds that there is a clear "basis to conclude that a more complete record might support the Commissioner's decision." Rosa, 168 F.3d at 83. The only error that needs to be rectified is at step five, as to which ALJ Singh failed to clarify ambiguities in the VE's testimony and obtain accurate estimates of the numbers of jobs available in the national economy that Ms. Medranda can perform. (R. 2517–18; see ECF Nos. 16 at 14; 17 at 2).[5] As noted above, at the Fifth Hearing, the VE provided estimated of numbers of jobs for the broader SOC categories but did not appear to provide numbers for the three specific DOT positions of hand packer, production worker, and production inspector. (R. 2554–62). Thus, on remand, "[a]ll the ALJ will

---

[5] Although the Commissioner suggests that the ALJ committed errors in evaluating the medical opinion evidence at step four (ECF No. 16 at 14, 18–19), on reply Ms. Medranda states that she does "not take issue with the step four finding that [she] cannot perform her PRW." (ECF No. 17 at 2). Given Ms. Medranda's concession, the only matter in dispute for remand is step five.

need is the [accurate] numbers of jobs available in the relevant time period" for these three titles in the DOT, and neither Ms. Medranda nor the Commissioner contend that those numbers are unavailable. Martinez v. Saul, No. 19 Civ. 6515 (BCM), 2021 WL 2588783, at *11 (S.D.N.Y. June 23, 2021) (remanding for further proceedings where ALJ erred at step five in failing to obtain estimated number of jobs identified by VE); see James D. v. Comm'r of Soc. Sec., No. 8:20 Civ. 1544 (FJS/DEP), 2022 WL 958525, at *6 (N.D.N.Y. Jan. 7, 2022) (denying request for remand for calculation of benefits and remanding for further proceedings at step five); Hamilton v. Comm'r of Soc. Sec., 105 F. Supp. 3d 223, 232 (N.D.N.Y. 2015) (same). If the Commissioner shows on remand that Ms. Medranda can perform with her RFC one or more of the titles—as distinct from the SOCs—that the VE identified, and that those titles exist in significant numbers in the national economy during the relevant period, there will be substantial evidence to support the Commissioner's decision that she is not disabled. See Sczpanski v. Saul, 946 F.3d 152, 161–62 (2d Cir. 2020) (denying claimant's request to remand solely for calculation of benefits where error occurred at step five and ALJ needed to modify only one aspect of the hypothetical posed to the VE).

Furthermore, as the Commissioner correctly points out (ECF No. 16 at 16), for this Court to direct the award of benefits absent reliable VE testimony at step five would be reversible error. See Williams v. Apfel, 204 F.3d 48, 49–50 (2d Cir. 1999) (reversing district court's award of benefits where record at step five was not "sufficiently complete or persuasive with respect to disability as to make a remand unnecessary"). The Court is not the proper authority to assess the types of jobs Ms. Medranda could perform and how many positions exist in the national economy. See Bavaro v. Astrue, 413 F. App'x 382, 384 (2d Cir. 2011) (declining claimant's

"invitation to take judicial notice of the decline of the photofinishing industry and deem the position infeasible for her"); Angi W. v. Comm'r of Soc. Sec., No. 21 Civ. 0557 (CJS), 2023 WL 2595008, at *11 (W.D.N.Y. Mar. 22, 2023) ("[T]he Court would be loath to conduct its own analysis of job types and job availability and second guess the vocational expert's conclusions."). Rather, where there are conflicts or ambiguities in the VE's testimony, the ALJ has an "independent, affirmative obligation . . . to undertake a meaningful investigatory effort" to clarify the VE's testimony, and failure to fulfill that obligation warrants further administrative proceedings. Lockwood v. Comm'r of Soc. Sec. Admin., 914 F.3d 87, 92 (2d Cir. 2019); see Gibbons v. Comm'r of Soc. Sec., No. 22-2730, 2023 WL 3830774, at *2 & n.3 (2d Cir. June 6, 2023) (summary order) (denying claimant's request for remand solely for calculation of benefits and remanding for further administrative proceedings where ALJ failed to clarify conflicts in VE's testimony).

Finally, while the 15-year saga of proceedings involving Ms. Medranda's Applications is distressing, that "delay alone is not sufficient reason to remand solely for a benefit calculation." Danielle C. v. Kijakazi, No. 3:22 Civ. 00448 (JCH), 2022 WL 17750834, at *4 (D. Conn. Dec. 15, 2022) (despite five-year delay, remanding for further proceedings because "ambiguity clouding the vocational expert's testimony" meant there was "utility to further evidentiary proceedings"); see Bush, 94 F.3d at 46 (absent finding that claimant was "actually disabled," holding that ten-year delay was not itself a reason to remand for calculation of benefits); Martinez, 2021 WL 2588783, at *11 (despite "almost four decades that ha[d] passed since plaintiff first sought benefits," remanding for further proceedings rather than for calculation of benefits).

To address the impact of the delay on Ms. Medranda and minimize any further delay, however, the Court finds that it is appropriate to "set a time limit for action by the administrative tribunal[.]"  Zambruno v. Califano, 651 F.2d 842, 844 (2d Cir. 1981); see Martinez, 2021 WL 2588783, at *11 (collecting cases in which courts imposed time limit on agency proceedings on remand).  As discussed above, the only issue on remand is step five, specifically, whether a significant number of jobs that Ms. Medranda can perform with her RFC exist in the national economy.  Accordingly, further proceedings before the ALJ on remand must be completed within 120 days of the date of this Opinion and Order.  If the decision of the Commissioner is a denial of benefits, the final decision of the Commissioner must be rendered within 60 days of Ms. Medranda's appeal from that decision.  "[I]f these deadlines are not observed, a calculation of benefits" owed to Ms. Medranda based on her alleged onset date of February 1, 2009 "must be made immediately."  Michaels v. Colvin, 621 F. App'x 35, 41 (2d Cir. 2015) (summary order); see Butts v. Barnhart, 416 F.3d 101, 106 (2d Cir. 2005) (imposing similar time limits); Martinez, 2021 WL 2588783, at *11 (same).

## IV. CONCLUSION

For these reasons, Ms. Medranda's Motion is GRANTED IN PART and DENIED IN PART, and the Commissioner's Motion is GRANTED IN PART and DENIED IN PART.  This action is remanded for further proceedings, consistent with this Opinion and Order, which must be completed before the ALJ within 120 days of today's date, and before the Commissioner within 60 days of any appeal from the decision of the ALJ.

The Clerk of the Court is respectfully directed to close ECF No. 14 and to close this action.

Dated:      New York, New York
            September 6, 2024

SO ORDERED.

SARAH L. CAVE
United States Magistrate Judge